MATTER OF P—

In VISA PETITION Proceedings

A–12111162

*Decided by Board July 14, 1961*

Expatriation—Act of March 2, 1907—Automatic reacquisition of foreign na-
tionality—Standard of proof to establish voluntary acceptance of foreign
nationality.

(1) Current standard of proof in expatriation cases applies to conduct within
section 2 of Act of March 2, 1907. Where foreign nationality was acquired
solely by operation of law, proof of "voluntary acceptance" through overt
acts must be supported by clear, convincing and unequivocal evidence to
warrant finding of loss of citizenship.

(2) Where petitioner's father, naturalized in 1903, reacquired Italian citizen-
ship in 1914 under automatic provisions of Italian Nationality Law of June
13, 1912, evidence that he obtained and used Italian passport in traveling to
Italy in 1922 does not establish "voluntary acceptance" of Italian nation-
ality with requisite degree of proof in view of unexplained motivation in
using Italian passport, absence of evidence of other overt acts of acceptance,
and fact that application which he made for U.S. passport in Italy the fol-
lowing year, in 1923, is construable as manifesting a continuing intention to
retain U.S. nationality.

(3) Petitioner's voting in Italian political elections and service as a conscript
in the Italian Army, during which time he took an oath of allegiance to
the Italian Crown, do not constitute expatriating acts when he was im-
properly advised prior thereto by official sources that he had no claim to
U.S. citizenship.

BEFORE THE BOARD

DISCUSSION: The petitioner appeals from the denial of his visa
petition by the District Director, New York District, dated Janu-
ary 27, 1961. The District Director found that the petitioner did
not acquire United States citizenship at birth because his father
expatriated himself prior to the birth of petitioner. The appeal will
be sustained.

The petitioner's father, A—P—, was naturalized in the United
States on April 20, 1903. Records of the Passport Office of the
Department of State show that A—P— executed two affidavits at
the Consulate General at Naples. He applied for a United States
passport at the American Consulate General on October 23, 1923, and
he stated in his first affidavit that he had arrived in Italy on Janu-

362

ary 20, 1922, and had traveled from the United States with an Italian passport issued by the Italian Consul General at Cincinnati, Ohio. In the second affidavit, on January 25, 1924, he stated that he (A—) was in Italy from 1911 until 1914, during which stay his son, P—P— (petitioner), had been born. P—P— was born on October 30, 1914.

It was the view of the State Department that A—P— expatriated himself on July 1, 1914 under the provisions of the first paragraph of section 2 of the Act of March 2, 1907,[1] by having acquired Italian nationality under the provisions of Article IX(3) of the Italian Nationality Law of June 13, 1912.[2] It was the view of our Government that the loss of United States citizenship depended not only upon the reacquisition of Italian nationality, but upon the United States citizen's having "evidenced a voluntary acceptance of that nationality by obtaining and using an Italian passport for his travel to Italy in 1922." The Department of State's decision that A—P— had lost United States citizenship was communicated to the Secretary of Labor on October 3, 1933, and a report of expatriation in the name of A—P— was transmitted to the Secretary of Labor with a letter of January 20, 1934.

P—P—, petitioner, first applied for a United States passport on May 18, 1933, before a United States Vice Consul at Rome, Italy. The application for passport executed by petitioner was disapproved by the Department of State on October 3, 1933, on the ground that the applicant had not acquired United States citizenship at birth, since his father had expatriated himself prior to the applicant's birth.

P—P— next applied for documentation as a citizen of the United States at the American Consulate General at Naples, Italy, on June 15, 1960, by executing an application for registration as a citizen of the United States. In connection with his application,

---

[1] Act of March 2, 1907, section 2, provides: "That any American citizen shall be deemed to have expatriated himself when he has been naturalized in any foreign state in conformity with its laws, or when he has taken an oath of allegiance to any foreign state.

"When any naturalized citizen shall have resided for two years in the foreign state from which he came, or for five years in any other foreign state, it shall be presumed that he has ceased to be an American citizen, and the place of his general abode shall be deemed his place of residence during said years: *Provided, however,* That such presumption may be overcome on the presentation of satisfactory evidence to a diplomatic or consular officer of the United States, under such rules and regulations as the Department of State may prescribe. . ." (34 Stat. 1228; 8 U.S.C. 17.)

[2] Article IX of the Italian Nationality Law of June 13, 1912, provides: "He who has lost citizenship * * * may reacquire it: * * * (3) After two years of residence in the Kingdom if the loss of citizenship has been due to the acquisition of foreign citizenship."

he stated that he had taken an oath of allegiance to the Italian Crown at Rome, Italy, in 1935 while serving as a conscript in the Italian Army and that he had voted in Italian political elections on a number of occasions, because he had been advised that he had no claim to United States citizenship.

The Department of State reversed its previous decision in the instant case and decided that P——P— did acquire United States citizenship at time of birth on October 30, 1914, under section 1993, Revised Statutes; that his father, A——P—, had not lost United States citizenship at that time. This record contains a memorandum from the Director of the Passport Office to the Assistant Director for Citizenship, Immigration and ·Naturalization Service, New York, stating the Department of State belief that in the light of "recent important court decisions," particularly "the Supreme Court decision in the case of *Nishikawa* v. *Dulles*," 356 U.S. 129 (1958), "an administrative decision that a person had lost United States citizenship will be upheld by the courts only if the decision is based on an act which was both voluntarily performed and expressly made expatriating by statute."

It had been the long-standing view of the Department of State and the Immigration and Naturalization Service, supported by judicial and administrative decisions, that expatriation under the first paragraph of section 2 of the Act of March 2, 1907 may be based upon the fact that a person has acquired a foreign nationality solely by operation of (a foreign) law followed by overt acts or oral or written acts voluntarily performed, which were regarded as "acceptance" of the foreign nationality. For this view, the Immigration and Naturalization Service continues to contend. The Service representative points out that the Department of State has in the past considered that the Italian nationality conferred under the provisions of the Italian Nationality Law of 1912 was "voluntarily accepted" when a naturalized American citizen of Italian origin applied for and accepted an Italian passport or identity card describing him as an Italian national, that the act of accepting the Italian passport or identity card should be considered as *prima facie* evidence of the acceptance of Italian nationality under the provisions of the Italian law. The Service representative declares that this view was reaffirmed by this Board as recently as 1955 in *Matter of M*—, 6—590 (B.I.A., 1955).

It seems to be the view of the State Department, expressed in the letter from the Director of the Passport Office, that their decision in this matter declares a totally new policy dictated by recent Supreme Court decisions. The State Department letter sets forth the past view and suggests that it would be found now that a person has lost United States citizenship only if the act on which

the decision is based "was both voluntarily performed and expressly made expatriating by statute." The Service representative argues that the Nationality Act of 1940 and the Immigration and Nationality Act of 1952, and the court decisions interpreting these two laws, should not be made to apply to the period 1907 to 1941; that the two later Acts contain different provisions with regard to denaturalization and expatriation of a dual national; and that it is a mistake at this late date to attempt to apply the present rules, decisions and statutory provisions regarding burden of proof and denaturalization to the period covered by the Act of March 2, 1907.

It is our view that the State Department in the instant case is not urging a completely new standard, nor a new standard necessary to conform or adopt our traditional view of the Italian Nationality Law of June 13, 1912 to the issuance of a passport to P—P—. Without re-examining the Supreme Court decisions of the last ten years, it may be stated unequivocally that the Government now has a more severe burden of proof in cases regarding expatriation than the Government carried in the past. The facts in the instant case do not satisfy the requirement that the Government establish by clear, convincing and unequivocal evidence that the father of the petitioner, A—P—, "accepted" Italian nationality.

A—P— reacquired Italian nationality in Italy on July 1, 1914, by operation of the Italian Nationality Law. The State Department records show that he left Italy in 1914, presumably after the birth of his son (in October) that year, and was readmitted to the United States. At that time there was no such thing as a reentry permit, and it must be assumed that he was readmitted to the United States as a returning citizen. The act of "acceptance," according to the State Department and Immigration Service, which resulted in A—P— losing his United States citizenship, was his returning to Italy January 20, 1922, on an Italian passport. However, he applied at the United States Consulate in Naples, Italy, for a United States passport on October 23, 1923, indicating that he had not abandoned his United States citizenship and hoped to assert it by again obtaining a United States passport. The record does not show *why* he obtained an Italian passport (issued at Cincinnati in 1922), but it may be assumed that he accepted it, not voluntarily, but because it was the only passport he could obtain at the time.

At no time was it held by the *courts* that remaining in his native country for more than two years automatically expatriated a naturalized citizen under the 1907 Act, but this rule was established and accepted by administrative officials only after extensive litigation. *Leong Kwai Yin* v. *United States*, 31 F.2d 738 (C.A. Hawaii, 1929); *United States* v. *Eliasen*, 11 F.2d 785 (D.C. Wash., 1926); *Camardo* v. *Tillinghast*, 29 F.2d 527 (C.A. Mass., 1928), and many

other cases. At the time petitioner's father returned to Italy with an Italian passport in 1922, the law was not firmly established. There seems to be no record, but it is reasonable to assume that he may have tried to secure a United States passport in this country and been refused due to the fact that he had remained in Italy more than two years (not of itself a factor causing automatic expatriation). The fact that he applied in Italy for a United States passport the following year indicates that this "overt act" of accepting an Italian passport was not *voluntarily performed* and, therefore, A—P— had not yet lost his United States citizenship at the time his son was born in October of 1914. It is true that A—P— then remained in Italy until his death in August 1932. Having been denied a United States passport, there was no way he could return to the United States except under the Italian quota.

P—P— at the age of 18 applied for a United States passport on May 18, 1933. The fact that he applied at that time indicates that he and his father had never given up their claim to United States citizenship and were still hoping to assert it successfully. Although petitioner voted in Italian political elections and served as a conscript in the Italian Army, during which time he took an oath of allegiance to the Italian Crown, it is admitted that these acts do not constitute expatriation when the claimant has been improperly advised that he had lost his United States citizenship.[3]

In *Matter of M—*, 6—590 (B.I.A., 1955), cited by the Service representative in oral argument, the Italian national returned to Italy in 1910; he not only received an Italian card of identity describing him to be an Italian national, but he disposed of all his property in this country, purchased a business in Italy which he operated until his death in 1928, and never applied for a United States passport in Italy after he returned there in 1910. Furthermore, M— did not return to the United States until she was 52 years old. We found in that case that M—'s father did accept Italian nationality, and that there was no adequate reason for M— to have waited such a long period before asserting her United States citizenship. The record in that case was clear as to the "voluntary acceptance" of Italian nationality following the naturalized citizen's return to Italy. However, in *Matter of R—*, 6—15, we decided that the individual had not lost his citizenship by performing a "voluntary overt act" manifesting "acceptance" of Italian nationality; that he had satisfactorily explained his

---

[3] *Matter of S—*, 8—221, and *Matter of S—*, 8—226, wherein the board held that acts designated expatriative by statute will not operate to expatriate where the claimant was unaware that he had United States citizenship; we limited this rule to situations where the claimant was misled by a change of interpretation in the law, or where he was misinformed by government officers and believed that he had already lost his United States citizenship.

366

failure to return promptly to the United States; that his membership in the Fascist Party had been of a "compulsory nature," to obtain employment and the other essentials of living, and that each of these cases must be decided upon its own apparent merits, citing Hackworth, *Digest of International Law*, Volume III, p. 213. Both those cases presented more complete records than does the instant matter.

The present Act, section 349(a)(1) [8 U.S.C. 1481], provides that a national of the United States, whether by birth or naturalization, shall lose his nationality by obtaining naturalization in a foreign state *upon his own application*.[4] Under the present law a foreign statute such as the Italian Nationality Law of June 13, 1912 could not operate to affect a naturalized citizen. However, this was not the language of the 1907 Act, and the 1907 Act cannot be ignored. It is still the rule that expatriation occurred under the first paragraph of section 2 of the Act of March 2, 1907 where a person acquired a foreign nationality by operation of law (as here under the Italian Nationality Law of June 13, 1912) followed by overt acts voluntarily performed, which may be regarded as "acceptance" of the foreign nationality. We do believe, however, that the present *standard of proof* regarding expatriation applies to the act of "acceptance" of Italian nationality, and proof of that voluntary acceptance must be clear, convincing and unequivocal.

The present record does not establish that A—P— journeyed to Italy in 1922 on an Italian passport voluntarily, *in the light of the fact that he applied in Italy for a United States passport the following year*. Evidently he made two trips to the Consulate General at Naples, one in 1923 and one in 1924, because the State Department letter refers to two affidavits executed by him, one on October 23, 1923, and one on January 25, 1924. We conclude that he had a "continuing intention" to retain his United States nationality, evidenced by his application for a United States passport in 1923, and that this record does not establish by clear and convincing evidence that he "accepted" Italian nationality. It appears that the change of citizenship was arbitrarily imposed upon A—P— without his concurrence, and that P—P— did, therefore, acquire United States citizenship at birth in Italy in 1914.

ORDER: It is ordered that the appeal be sustained and that the petition for issuance of nonquota immigrant visa be approved.

---

[4] Immigration and Nationality Act, section 349(a)(1), provides: "From and after the effective date of this Act a person who is a national of the United States whether by birth or naturalization, shall lose his nationality by—(1) obtaining naturalization in a foreign state *upon his own application*, upon an application filed in his behalf by a parent, guardian, or duly authorized agent, or through the naturalization of a parent having legal custody of such person. . ." (Emphasis supplied.)